SHURTZ *v.* THOMAS. *Decided 7 June A.D. 231*

General words in a deed by trustees, descriptive of the interest conveyed, will be confined by the prior recitals. Hence, where a widow administratrix executes a deed pursuant to and reciting a contract by her deceased husband, and the decree of the court ordering her to convey, which purports to convey all the estate of the husband and of her the said M. (M. being the administratrix), since his decease, and signs and seals it without adding a description of her office; her dower does not pass.

Vendee agreeing to apply part of the purchase-money in satisfaction of all judgments and liens against the vendor, by becoming the purchaser at sheriff's sale under one of those judgments after the vendor's death, does not divest the widow's dower, for he was bound to extinguish the debt for which the land was sold.

Accepting a conveyance by administrators, pursuant to a decree for perfecting the decedent's contract, is a waiver of the right to a title clear of the encumbrance of the widow's dower.

IN error from the Common Pleas of Centre county.

Case stated in an action of dower. In July, 1833, James Smith, the husband of the demandant, being seised of the land now in question, subject to his mother's right of dower, entered into articles for the sale of the land to Franklin B. Smith, for $10,500. The purchaser agreed to pay all judgments and liens on the estate, then amounting to about $5,000, and to save the vendor, his heirs, executors, &c., harmless from them. $3,000 of the purchase-money

was to be retained, secured by mortgage, by the purchaser during the life of the vendor's mother, and at her death paid to him, and the residue was to be paid on the execution of the deed on the 1st of April following.   The purchaser further covenanted, that if the liens existing against the estate were not satisfied by the 1st of April, he would give the vendor satisfactory security against them.

James Smith died before the 1st of April, leaving his widow, the demandant, who, together with one Dale, administered to his estate.   Franklin B. Smith assigned his right under the articles to Thomas, subject to the payment of the purchase-money as stipulated to be paid by the articles, who procured it to be proved in the Common Pleas, pursuant to the act of 1792.

Upon this, Mary Smith and Dale, the administrators of James Smith, presented a petition to the Court of Common Pleas, praying leave to execute a deed to Thomas, according to the contract.   The court decreed accordingly, and the administrators executed a deed for the land to Thomas.   This deed recited the seisin of Smith, the contract, the petition and decree, and conveyed the land "and also all the estate, right, title, interest, &c., of the said James Smith, in his lifetime, and of them the said Mary and Dale, since his decease, in law or equity," and was sealed by the grantors, and signed without the addition of their official character.

Among the judgments against James Smith, which bound his estate, was one in favour of Franklin B. Smith, and another which had been assigned before the contract of sale was made.   After the death of James Smith, his administrators were substituted as defendants to a *sci. fa.* to revive, and judgment taken against them. This judgment was again assigned to one Valentine, after the execution of the deed by the administrators of Smith.   The land included in the deed was then levied on and sold, and conveyed by the sheriff to Thomas, the grantee in the administrator's deed. The administratrix having moved to set aside the writ before the sale, Thomas filed in the court a sealed instrument, declaring it was not his intention, in procuring the sale, to defeat any of the covenants contained in the contract, and bound himself to carry all his own covenants into effect.   Thomas paid the purchase-money, $2,000, to the sheriff, and had also executed a mortgage to secure the dower of James Smith's mother, pursuant to the articles.   It further appeared that on the final administration account there was a balance of $34 due to the estate.

Whether, under these circumstances, Mary, the widow of James Smith, was entitled to dower, was the question.

The court (WOODWARD, P. J.) gave judgment for the defendant.

*J. T. Hale,* for plaintiff in error.

*Curtin, McAllister* and *Burnside,* contrà.

GIBSON, C. J.—At the death of James Smith, his widow was entitled to dower in his estate. He had covenanted to convey it to his brother Franklin B. Smith, and pursuant to leave given by the Common Pleas, the plaintiff, his widow and administratrix, and Cornelius Dale his administrator, conveyed it to the defendant William A. Thomas, who had in the mean time acquired the equitable interest of the vendee. The deed purported to convey all the estate which the vendor had in his lifetime, and all the estate " of them the said Mary and Cornelius since his death ;" and this latter clause, it has been insisted here, as it was in the court below, where, however, the cause was decided on another point, carried the plaintiff's dower, consummated by her husband's death. The statute of 1792, which authorized the proceeding, enacts that such a deed shall have the same effect to pass the estate as if it had been executed by the decedent in his lifetime ; and Riddlesberger *v.* Mentzer assigns to it the same effect in regard to the widow's dower : so that the defendant is driven to the necessity of claiming a greater one, in this instance, from the clause I have particularly indicated. Had the dower been specifically described in it as a distinct estate and separate subject of the grant, an intention to convey it would have been too clearly disclosed to be resisted ; but the administrators were directed by the decree to deal, not with their own property, but with the legal title of the vendor ; and though a conveyance explicitly including an interest of their own would have passed it, yet the words in a conveyance like the present, are to be restrained, where they will bear it, to the business of the occasion, and no intendment is to be carried beyond it. The administrators met the defendant to execute a contract, not of their own, but of their intestate ; and before their particular interests are to be involved in their conveyance, it must appear by special description that they were intended to be involved. No one can believe that the plaintiff meant to throw in her dower ; and it would require strong terms to bear out an intention so opposite to her interest. By no construction but a strained one, could the clause in question be made to embrace any but joint interests of the administrators ; and as it does not appear that they had any, it seems to have been inserted under a vague impression that the

case was within the statutes which turn the devise of a power to sell into a devise of the legal title. It was well said by Mr. Justice Spencer, in Jackson v. Stevens, 16 Johns. 114, that general words of a releasor or grantor are to be restrained to the occasion; and that though they are to be taken most strongly against the releasor or grantor when they stand alone, yet that when they are preceded by an explanatory recital, they are to be interpreted in subordination to the general purpose; and the principle is sustained by all the decisions from Lord Arlington v. Merricke, 2 Saund. 414, down to Barker v. Parker, 1 T. Rep. 287, and perhaps by others still later. The deed before us recites the articles of sale, the death of the vendor, the probate of the contract, the prayer for leave to make a conveyance, and the decree; and it was in reference to the object to be accomplished by these, that the general words in the clause were predicated: they pass no more than the legal title which it was the office of the proceeding to convey.

The defendant claims title also paramount to the plaintiff's dower, as a purchaser under a judgment against her husband which bound his land, and consequently her initiate right of dower in it. But did he purchase in good faith? Both he and Franklin B. Smith, to whose equitable title under the articles he succeeded, had covenanted to apply a competent part of the purchase-money to payment of the judgments by which the estate was encumbered; of which, the judgment under which the defendant purchased, having procured it to be pressed to a sale, was one. To escape from the imputation of bad faith, he insists that he was not bound to pay them before he had received a clear title, and that he was therefore compelled to buy from the sheriff to protect his previous purchase. But he had himself agreed to clear the title with means retained by him for the purpose; and it is idle to say that he was placed in a dilemma, or that he could not pay before he had got a title, and that he could not get it before he had paid. The widow stands on the estate of the vendor from which her freehold is derived; and against his action for the residue of the purchase-money, had he lived to institute one, such a defence would have been treated as a mockery; and were the defendant before a court of equity as a suppliant for an injunction against her action of dower, founded on the same basis, he would be treated with very little ceremony. Even where there is not a covenant to apply the purchase-money, the existence of encumbrances is a defence to an action for it no further than retention of it is necessary to discharge them, and the reason for it, is that the title is safe while enough is in the hands

of the vendee to make it so. After securing the dower of Mrs. Simpson, which enters no further into the present question, enough was left in the hands of the defendant to pay off all the liens; and it was his business to apply it.

It is further insisted that the widow, having been a party to the revival of the judgment on which the land was sold, was personally bound by it, and is estopped, by the principle of Share *v.* Anderson, from claiming her dower in disaffirmance of it. Whether she was a party to it or not, it bound her dower, which would have been extinguished by a sale of the land to any one who was not bound to pay it. But a purchaser under a judgment which he ought to have paid, is in the predicament of a purchaser who knows that it was actually paid. It is paid as to him; and he shall not deny it.

Again, it is said that the contract looked to a conveyance free from, not the previous dower of Mrs. Simpson, the vendor's mother, but the dower of the plaintiff, his wife; and that, as the defendant was not bound, by the articles, to advance a dollar before he had been secured on that head, he was not bound to remove an encumbrance by an application of the purchase-money. But he thought proper to accept of a conveyance, which did not touch the plaintiff's dower, as satisfaction of the articles, and as an equivalent for the unencumbered fee simple. They contained a covenant for an unexceptionable title; and the defendant, standing in the place of the vendee, was not bound to take anything less from the administrators than he would have been bound to take from the vendor himself; but Clark *v.* Seirer shows that he might, by taking less, preclude himself from demanding anything further. Had he insisted on his extreme right, equity would not have enforced it against the plaintiff, either as a wife or a widow, but would have left him to his action at law, for a breach of the covenant. But he was content to abandon a part of the contract, in consideration of having the rest specifically executed, and to accept from the administrators no more than the vendor would have been compelled by a chancellor to give him; to accomplish which, he took the initiative. He was entitled to demand an unencumbered fee simple; but, waiving his right, he might take less; and he did waive it, when he took a conveyance from the administrators, which had the same effect that a conveyance from the vendor would have had without the joinder of his wife. But the delivery of a deed in execution of articles to convey, is almost always held to be satisfaction of the covenants; and the accept-

ance of the administrator's conveyance of the vendor's title, encumbered with his widow's dower, is as much satisfaction of the articles, in this instance, as would have been the vendor's separate conveyance, which alone he could have been compelled to make. Undoubtedly there are sometimes covenants which are not thus satisfied; but they are for things collateral to the conveyance, such as to convey one tract of land, and to procure a third person to convey another, as in Brown v. Moorhead, 8 S. & R. 569; or such as have been founded on fraud or misapprehension, as in Crotzer v. Russell, 9 S. & R. 78; and Anderson v. Long, 10 S. & R. 55. In this instance, the covenant for title was not collateral, nor was the acceptance of the deed founded in fraud or misapprehension; and the defendant took by it, not an unexceptionable title, but one which he consented. to take in satisfaction, and as an equivalent for it.

There was, therefore, no impediment to performance of the defendant's covenant; and why was he not bound in equity to perform it for the benefit of the plaintiff? This question raises the only apparent difficulty in the case. It is not to be disputed that Franklin B. Smith, whose place he assumed in the proceeding to procure the title, would have been bound to perform it at the instance of the administrators who succeeded to the rights of the vendor, and who would have been entitled to insist on an application of the purchase-money, to protect the assets in their hands. Equity would not have suffered him to retain it, for the purpose of regaining, by a sale on one of them, what he had consented to abandon by accepting a conveyance from which it was excluded. It would have compelled him to pay off the liens, or it would have assigned the plaintiff's dower, in disregard of any title he might have acquired under them. Now, though it is not to be denied that there was originally no privity between the defendant and the plaintiff, who was a stranger to his covenant with Franklin B. Smith; yet, when he had taken the place of the latter, proved the contract, and procured the administrators to execute a conveyance to him on the faith of that covenant, an immediate privity sprung up between the parties, on the basis of mutual obligation. On no condition but that he would perform the contract which his predecessor had undertaken to perform, would the administrators have consented to part with the security for the purchase-money which retention of the title would have afforded; and they were not bound to part with it, without having received performance of his stipulations. They were entitled to have the judgments paid simul-

taneously with the execution of the deed, or they were entitled to have the purchase-money, that they might pay them with their own hands, as a legitimate destination of the fund; and equity would have had it applied in some way, or have rescinded the contract. The plaintiff would not have joined in the conveyance, except to have the judgments paid in ease of her dower; and to purchase an estate paramount to it on one of them, which he was bound in conscience to pay, was a legal fraud, which postponed the title he acquired by it. In these circumstances, a chancellor would assign her dower in disregard of it. The only thing that suggests a doubt of it is the fact, that scarce a dollar was left when the creditors were satisfied; and their interest in the land, as a chattel for payment of debts, was paramount to that of the widow. But who can say that enough would not have been left for both, had the defendant suffered the contract to rest rescinded, so far as regarded specific performance of it, as it was at the death of the vendor, and permitted the land to be sold for an outside price? Without tendering a conveyance of it clear of her dower, the administrators could not have compelled Franklin B. Smith, or the defendant, who was bound to him for the performance of his covenants, to execute the purchase specifically, or even to respond in damages for a breach of the contract; and he, on the other hand, could not have compelled the administrators to convey more than he could have compelled the vendor to convey; he could have done no more than recover damages by an action to his use, in the name of Franklin B. Smith. But rather than restore the land, and take his chance of that, he thought fit to retain it, under a conveyance of title, which left her dower on it; from which we must infer, that he thought it worth the purchase-money and the value of the dower together, or at least that he thought it preferable, even thus burthened when paid for, to what he might gain by a lawsuit; for he was bound to know, as the law of the contract, that the dower did not pass with the fee. If he was right in his estimate, he was bound by every tie of conscience to render to her what, by the legal consequences of the arrangement, was her own. If he was wrong, he voluntarily consummated what turned out, by the death of the vendor and his own blunder, to be a hard bargain; and no chancellor would, merely for that reason, suffer him to cut himself loose from it by buying in the estate on a paramount judgment, which he was bound to the widow to discharge. He would be held to the arrangement, however disastrous to him; and his

2 H 2

paramount title would be postponed in equity, however unexcep·
tionable at law.

Judgment reversed, and a *venire facias de novo* awarded.

ROGERS and BURNSIDE, Js., dissented.