# Pennsylvania Horticultural Society *v.* Craig.

*Trusts and trustees—Base or qualified fee—Restraint on aliena-
tion—Rule against perpetuities—Deeds—Construction of deeds—
Lease.*

1. Where a deed is given by the owner of land to trustees for the
use and benefit of a horticultural society "without any power on
the part of the said society or the said trustees at any time to
alienate or encumber the same," and with reversion to the grantor
or her heirs "if at any time the said society shall cease to use the
said property as above mentioned or cease to exist," the condi-
tions annexed to the deed are valid and the grantees are bound by
them; they are not void on the ground that they are a restraint
upon alienation or violate the rule against perpetuities.

2. In such a case where the grantor executes a second deed in
which she recites the destruction of the society's building by fire,
and a request by the society to her to grant to the trustees the
power to sell the property free from the trust, and to invest the
proceeds for the use and benefit of the society, and then grants
to the trustees free and discharged from all trusts, all her right,
title and interest in the land, and by a subsequent and third deed
in which she recites the two prior deeds, she restricts the scope of
the grant in the second deed so as to require the trustees to rein-
vest the proceeds of the sale for the same trusts as were in the two
former deeds set forth, and the trustees by accepting this last
deed acquiesced in the restrictions of the former deeds, thus re-
cited, they are bound by the intention so declared and such con-
veyance will not be construed to convey a fee simple estate to the
society so as to give it a standing to demand an absolute convey-
ance from the trustees after the death of the grantor. The trus-
tees are still to hold the property if they do not sell it, or the pro-
ceeds thereof if they do sell it, subject to the same trusts as were
created by the original grant.

3. In such a case where the first deed gave to the trustees the
power to lease, collect and receive rents and to exercise general
supervision over the building, but without power to "sell or convey,
alienate, encumber or charge" the property, the trustees do not
violate the condition of the deeds by executing a lease of the so-
ciety's building for thirty years, as the only means of securing the
re-payment of money advanced by persons to re-build the struc-
ture after the fire, where it appears that the lease reserved to the
society ample accommodations in the building for all its public

purposes; and this is especially so where it appears from the recital in the original deed that the purpose of the grant was to establish a perpetual memorial to the grantor's deceased brother, who had been president of the society.

*Deeds—Recital—Intention.*

4. Recitals in a deed are to be considered in determining the true intent and meaning of the parties, and will restrict general words to a narrower meaning if the intent is clear.

*Deeds—Base fees—Conditional estates—Strict construction.*

5. Conditions in a deed creating a base or conditional fee are strictly construed. When an estate or freehold is to be divested and the grantor re-instated the burden is on him who asserts the right to re-enter to show the breach of the precise conditions upon which the estate reverts.

Argued Jan. 16, 1913. Appeal, No. 269, Jan. T., 1912, by Contributors to the Pennsylvania Hospital, Devisees under will of Elizabeth Schaffer, deceased, from decree of C. P. No. 1, Philadelphia Co., Sept. T., 1909, No. 4759, on bill in equity in case of Pennsylvania Horticultural Society v. Robert Craig, Edward Hacker, George Vaux, Jr., and Girard Trust Company, Surviving Substituted Trustees, and Contributors to the Pennsylvania Hospital, Devisees under the will of Elizabeth Schaffer, deceased. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Bill in equity for conveyance of real estate. Before KINSEY, J.

From the record it appeared that the bill prayed that a trust created by a deed of Elizabeth Schaffer, to trustees for the benefit of the Pennsylvania Horticultural Society be declared void and that the fee to the property described in the deed be conveyed to the complainant, the beneficiary of the trust.

The answer denied that the trust created by Elizabeth Schaffer was void, or that the complainant was entitled to a conveyance of the fee. It was further alleged that

the property had reverted to the defendant, the beneficiary under Miss Schaffer's will, for condition broken.

At the trial it appeared that the Pennsylvania Horticultural Society was incorporated under a special Act of Assembly of March 23, 1831, P. L. 197, "for the purpose of promoting and encouraging horticulture, and improving the growth of vegetables, plants, trees, fruits and flowers, and of introducing into our country new varieties and species."

On May 17, 1887, Elizabeth Schaffer executed a deed which provided as follows:

"And Whereas, the said Elizabeth Schaffer as a perpetual memorial of her deceased brother, William L. Schaffer, late President of the Pennsylvania Horticultural Society, and to aid and assist the said Society, has determined to convey the entire property above mentioned clear of all incumbrance to Trustees forever, for the use and benefit of the said The Pennsylvania Horticultural Society, without any power on the part of the said Society, or the said Trustees, at any time to alienate or encumber the same. The said property to be used as is now done by the said Society for its meetings, library, exhibitions of plant and flowers, and all other purposes appertaining thereto. The said Trustees to have the right and privilege of renting the Hall from time to time, when not required for the use of the said Society, for lectures, concerts, exhibitions, meetings, &c., in order to furnish a revenue for the said Society. Provided that if at any time the said Society shall cease to use the said property as above mentioned, or cease to exist, then in such case the said entire property shall immediately revert to the said Elizabeth Schaffer, her heirs or devisees, free from all trusts whatsoever."

And the habendum thereof, under the usual form for trustees, provided as follows:

"In Trust to hold and keep the same as a perpetual memorial of William L. Schaffer, deceased, for many years President of The Pennsylvania Horticultural So-

ciety at all times hereafter benefits and purposes of the said The Pennsylvania Horticultural Society at all time hereafter forever as a place of meeting for the said Society, its Library, and for holding exhibitions of plants and flowers, receptions, and other purposes appertaining thereto,......as may from time to time be required by the said Society for premiums awarded by the said Society upon exhibitions of plants, flowers, &c., or for the purchase of plants and flowers for the decoration of the Hall, and other proper expenses of the Society. Provided Always that this grant and conveyance is under and subject to the express condition that neither the said Trustees or their successors in this Trust, or the said The Pennsylvania Horticultural Society, shall at any time or times sell or convey, alienate, encumber or charge the said above described premises, in any manner or for any purpose whatsoever. And also if at any time hereafter the said Society shall cease to require or use the said property, or the income derived therefrom as above mentioned, or the said Society from any cause shall go out of existence as a corporate body, then and in such case the said Trustees or their successors in the trust, shall immediately reconvey the said entire property above described, with the appurtenances unto the said Elizabeth Schaffer, her heirs or devisees, free, clear and discharged of and from all trusts and confidences whatsoever."

In 1893 the building known as the Horticultural Hall was destroyed by fire and the Horticultural Society, being unable to restore it, passed the following resolution, dated July 18, 1893:

"Resolved, That this Society request the Trustees to obtain from the said Elizabeth Schaffer such power and authority as will enable them to sell and convey the premises discharged of all trusts in favor of this Society or any other party and to reinvest the proceeds for the use and benefit of the Society in accordance with the instructions of the said Elizabeth Schaffer."

In consequence of this fire and this resolution, Miss Schaffer, on the eighth of July, 1893, executed another deed to the trustees.

This deed provided inter alia, as follows:

"And Whereas, the building situated on the said premises, heretofore used by the said Horticultural Society and constituting its principal source of revenue, has been destroyed by fire and all the means possessed and attainable by the Trustees for reconstructing the same, including the insurance money, are entirely inadequate for such purpose and the said premises are therefore no longer used or capable of being used for the purposes of the said Horticultural Society, and the said Trustees under the provisions of the Deed would be compelled to reconvey the said premises to the grantor.

"And Whereas, the said Elizabeth Schaffer has been requested by resolution of the Horticultural Society to grant to the said Trustees such power and authority as will enable them to sell and dispose of the said premises free and discharged of all the trusts and conditions of the above mentioned Deed and to invest the proceeds for the use and benefit of the Pennsylvania Horticultural Society.

"And Whereas said Elizabeth Schaffer is willing so to do.

"Witnesseth, the said Elizabeth Schaffer in consideration of the premises and of one dollar to her in hand paid by the said parties of the second part, the receipt whereof is hereby acknowledged, does hereby grant, bargain and sell to the said parties of the second part, free and discharged from all trusts all her right, title and interest in, of and to all the premises hereinbefore referred to and which are more particularly described as follows, to wit: ......"

On March 7, 1894, at a joint meeting of the Horticultural Society and the trustees, a minute was passed which stated inter alia:

"The result of this joint meeting being that the Board

of Trustees expressed themselves as being perfectly willing to rebuild the hall on its present site, but owing to the lack of funds at their command, it was impossible for them to do so. The Board, however, were unanimously in favor of rebuilding, provided the required sum needed for the purpose could be raised. This money, should it be raised, must not be in any way guaranteed by the trustees as a loan, the Board being powerless to encumber the property."

The deed of June 2, 1894, made by Miss Elizabeth Schaffer, was recorded on June 6, 1894; this deed recited the two prior deeds of the seventeenth of May, 1887, and July 8, 1893, and stated that the latter deed was about to be recorded, and provided as follows:

"Now This Indenture Witnesseth that it was the intention of the said Elizabeth Schaffer by said deeds to vest the title to said lot of ground in said Trustees and their successors in fee free from all liability for the debts of The Pennsylvania Horticultural Society, the cestui que trust therein named, with full power and authority on the part of said Trustees to sell and dispose of said lot of ground and convey the same to the purchasers thereof free and discharged of all the trusts and conditions imposed by said deeds and without liability on the part of the purchasers to see to the application of the purchase money. And the said Elizabeth Schaffer doth hereby grant, bargain and sell, release and confirm unto the said party of the second part, their heirs and assigns and their successors in the trust the said lot of ground, to have and to hold the same to their proper use and behoof upon the trusts in said deeds set forth, with full power and authority on the part of said Trustees and their successors to sell and dispose of said lot of ground and to convey the same to the purchasers thereof free and discharged of all said trusts and without liability on the part of the purchasers to see to the application of the purchase money and to reinvest the proceeds of such sale in such real or personal property as the

said Trustees may deem best and to hold the same upon the same trusts as were in said deeds set forth with like power of sale and reinvestment from time to time, as the proper execution of the trust may require. But both said lot of ground and any other property real or personal subsequently purchased in its stead as well as the income thereof shall be free from all liability for the debts, contracts or engagements of the said The Pennsylvania Horticultural Society and its successors or to any process of execution or attachment issued on any judgment or proceeding against said Society or its successors."

On November 20, 1894, the Society passed the following resolution:

"Resolved that the President and Secretary be and are hereby authorized and directed to execute on behalf of the Society the agreement as prepared between the Society and the Trustees for the certificate holders as soon as the Committee on Building are prepared to proceed with the execution thereof." Dr. Mears stated that in offering the foregoing resolution he was able to say that the amount already subscribed for bonds was $130,000, and the prospects for raising the balance were quite encouraging, and asked that the resolution read be acted on, and made a motion to that effect.

At the trial it appeared in addition, that, in accordance with previous resolutions, the society executed a lease of the building, dated November 28, 1894, to trustees, to be held for an indefinite period for security of certain certificate holders, who had lent to the society the sum of $200,000.

Elizabeth Schaffer died on March 16, 1897, and by her will, duly admitted to probate, provided as follows:

"Sixth.—All the rest, residue and remainder of my estate of whatsoever character and wheresoever situate, as well that of which I may die possessed as that in which I may have any reversionary right or interest, including any interest in the premises known as Horti-

cultural Hall and the lot of ground adjoining, situate on the west side of Broad Street, between Locust and Spruce Streets, in the City of Philadelphia, I give, devise and bequeath to the contributors to the Pennsylvania Hospital, to be used for the endowment and support of free beds in the hospital of that institution, now located at Eighth and Spruce Streets, Philadelphia."

Upon the conclusion of the testimony the defendant, the Pennsylvania Hospital, asked that the bill be dismissed. This the trial judge refused to do, and found as a matter of law that the three deeds vested in the complainants a fee simple, and that they were entitled to an absolute conveyance in fee free from the trusts. Whereupon exceptions were filed by the Pennsylvania Hospital, upon dismissing which the court in banc held that the complainants had received by the deed of 1893 a fee simple, so that the deed of 1894 was of no effect, and confirmed the findings of the trial judge.

The decree was as follows:

And now, to wit, this 29th day of June, 1912, the case having come on to be heard upon Bill, Answer and Proofs, and exceptions to the findings and conclusions of the trial judge having been dismissed, upon motion of Maurice Bower Saul and John G. Johnson, attorneys for Pennsylvania Horticultural Society, It is ordered and decreed that the prayers of the bill be granted; and it is further ordered and decreed that the title to

All That Certain brick and stone building, known as Horticultural Hall, with four lots or pieces of ground described together as follows, to wit: Situate on the West side of Broad Street and North side of Lardner Street in the City of Philadelphia, containing together in front or breadth on said Broad Street, Ninety feet and extending in length or depth Westward of that width along said Lardner Street, Two hundred feet. Bounded Northward by ground belonging to the American Academy of Music, Eastward by said Broad Street, Southward by said Lardner Street and Westward by

ground marked in the general plan of city lots No. 1198, together with the appurtenances, &c.,

is vested in the Pennsylvania Horticultural Society in fee simple, free, clear and discharged of all trusts, contingencies and remainders; and it is further ordered and decreed that Robert Craig, Edward Hacker, George Vaux, Jr., and the Girard Trust Company (formerly the Girard Life Insurance, Annuity & Trust Company of Philadelphia), surviving and substituted Trustees under Deed dated May 17th, A. D. 1887, recorded in Philadelphia in Deed Book G. G. P., No. 255, page 323, &c., execute and deliver to the Pennsylvania Horticultural Society a deed of conveyance for [Here follows description as heretofore recited.] title to the said premises to vest in the Pennsylvania Horticultural Society in fee simple, free, clear and discharged of all trusts, contingencies and remainders.

*Error assigned* was the decree of the court.

*Charles Biddle,* with him *J. Rodman Paul,* for appellant.—It is immaterial whether the society is a charity, for clearly there is no attempt made in this deed to restrain alienation. The law as to restraints upon alienation and the creation of perpetuities is not applicable to this case: Brattle Square Church v. Grant, 69 Mass. 142; Tobey v. Moore, 130 Mass. 448; Hopkins v. Grimshaw, 165 U. S. 342 (17 Sup. Ct. Repr. 401).

Neither of the deeds made in 1893 and 1894 freed the premises from the trust.

The recitals in the deed show the grantor intended the trust to be continued: Shurtz v. Thomas, 8 Pa. 359; Jenner v. Jenner, L. R. 1 Equity Cases 361; Coleman v. Beach, 97 N. Y. 545; Clapp v. Byrnes, 3 N. Y. App. Div. 284 (38 N. Y. Supp. 1063).

The Horticultural Society is estopped from denying the validity of deed of 1894: Chloupek v. Perotka, 89

Wis. 551 (62 N. W. Repr. 537) ; Hutchinson v. Ry. Co., 41 Wis. 541.

The trustees have charged the property; it therefore reverts to the grantor; and, under the will, to the hospital: Darling v. Rogers, 22 Wend. (N. Y.) 483; Mitchell v. Warner, 5 Conn. 497; Carter v. Denman, 23 N. J. Law 260.

No entry is necessary to perfect this title: Austin v. Cambridgeport, 38 Mass. 215; Guild v. Richards, 82 Mass. 309.

*John G. Johnson,* with him *Maurice Bower Saul,* for appellee.—The Pennsylvania Horticultural Society is not a charity: Jackson v. Phillips, 96 Mass. 539; Babb v. Reed, 5 Rawle 151; Swift v. Beneficial Society, 73 Pa. 362; Knight's Est., 159 Pa. 500; Drury v. Natick, 92 Mass. 169.

The contributors to the Pennsylvania Hospital have no interest whatever in this proceeding: Beeson v. Patterson, 36 Pa. 24.

The restraints upon alienation in the deeds by Elizabeth Schaffer to the trustees of the Pennsylvania Horticultural Society are null and void, and the Pennsylvania Horticultural Society is entitled to a conveyance of the property from the trustees freed and discharged of all trusts: Walker v. Vincent, 19 Pa. 369; Reifsnyder v. Hunter, 19 Pa. 41; St. Luke's Church's App., 1 Walker, (Pa.) 283; Dodson v. Ball, 60 Pa. 492; Marsh v. Platt, 221 Pa. 431.

Elizabeth Schaffer, being the only one entitled to take advantage of the breach of the conditions of the deeds and she having conveyed all her reversionary interest to the trustees of the Pennsylvania Horticultural Society, the restraints upon alienation fall: Fisher's App., 162 Pa. 232; Philadelphia v. Bicknell, 35 Pa. 123.

Conceding, for the sake of argument, the appellant's position as to the deeds, there has been no breach: Griffin v. Fellows, 81½ Pa. 114; Providence Trustees' App.,

2 Walker (Pa.) 37; McCormick v. Connell, 6 S. & R. 151; Sharon Iron Co. v. Erie, 41 Pa. 341.

OPINION BY MR. JUSTICE ELKIN, March 31, 1913:

That the deed of 1887 conveyed a base, qualified or determinable fee cannot in the light of the authorities be seriously questioned. The estate conveyed may continue forever, and for this reason it is deemed to be a fee, but it may be determined if the property be diverted from the use intended, or if the conditions annexed to the grant be otherwise broken, and this makes it in contemplation of law a base or qualified fee. If the rights of the parties to the present controversy depended alone upon the deed of 1887, it would necessarily follow that the Horticultural Society could not compel a conveyance to it of an absolute title in fee simple to the property which the donor in her grant declared should be held, enjoyed and used upon certain conditions. The conditions annexed to the grant were not unlawful and must be deemed binding upon the trustees as well as the society for whose benefit the conveyance was made. We cannot agree with the contention of learned counsel for appellee that the conditions annexed to the grant in the deed of 1887 are void because of restraint upon alienation, or in violation of the rule against perpetuities. Of the numerous cases cited in the printed argument of appellee, not one relates to a base fee. At common law an unqualified restraint on the voluntary alienation of a fee simple interest, whether in the form of a prohibition or a clause of forfeiture, was held to be void; and the same rule prevails in Pennsylvania. But this rule applies only when the grant in the first instance conveys an absolute fee simple interest. In such a case, subsequent conditions intended to restrain the owner from exercising all incidents of the fee are void. In the case at bar the donor by her deed of 1887 did not part with all the incidents of the fee, and this makes a distinction clearly recognized in the application of the rule

making void restraints upon alienation, which does not apply to a base fee. The property in dispute here was conveyed in trust for a specified use upon the express condition that neither the trustees, nor their successors, nor the society for whose use and benefit the grant was made, shall at any time "sell or convey, alienate, encumber or charge the said above-described premises, in any manner or for any other purpose whatsoever." This is immediately followed by the reversionary clause which provides for a reconveyance if the society shall cease to require or use the property, or the income derived therefrom, or shall go out of existence. When the use ceases, or the society goes out of existence, the property reverts to the donor, her heirs or devisees. These conditions were intended to safeguard the benefaction of the donor and we are not advised of any declared policy or rule of law making them illegal. The donor did nothing but what she had the legal right to do and those who accepted her gift are bound by the conditions imposed. Our conclusion is that the conditions in the deed of 1887 are binding upon all concerned, and that they are not void on the ground of being a restraint upon alienation, or because in violation of the rule against perpetuities. The distinction as to the application of the rule against perpetuities and void conditions in restraint of alienation, is very clearly stated in Brattle Square Church v. Grant, 69 Mass. 142; Tobey v. Moore, 130 Mass. 448, and Hopkins v. Grimshaw, 165 U. S. 342.

We must now consider whether what was subsequently done vested the absolute title in the trustees for the use of the Horticultural Society so as to nullify the clause in the deed retaining a reversionary interest in the donor. The learned court below held that this result was accomplished by the deed of 1893. If the granting and habendum clauses contained in this deed stood alone, unexplained by the recitals in that and other deeds and resolutions relating to the conveyance, we would feel bound by this view of the case. But this is

only one of three deeds for the same property, executed by the same donor at different times, and intended to meet contingencies which arose in her lifetime. The intention of the parties clearly appears from the recitals in the deeds and the resolutions of the society relating to the coveyances. In the recitals contained in the deed of 1893 it appears that the original building on the premises had been destroyed by fire, and that "all the means possessed and attainable by the trustees for reconstructing the same, including the insurance money, are entirely inadequate for such purpose, and the said premises are therefore no longer used or capable of being used for the purposes of the said Horticultural Society, and the said trustees under the provisions of the deed would be compelled to reconvey the said premises to the grantor." This is followed by another recital in which it appears that the donor had been requested by resolution of the Horticultural Society to grant to the trustees "such power and authority as will enable them to sell and dispose of the said premises free and discharged of all the trusts and conditions of the above mentioned deed and to invest the proceeds for the use and benefit of the Pennsylvania Horticultural Society." It is further recited that the donor is willing to do as requested, which can only mean that she was willing to grant the trustees the power to sell and dispose of the premises free and discharged of all trusts, but that the proceeds arising from the sale were to be invested for the use and benefit of the society in furtherance of the purpose for which the original conveyance was made. The trustees asked for a power of sale and not for a conveyance to them of the fee simple title. They evidently wanted the power to sell so that they could rebuild on a less expensive location, but this they could not do without the consent of the donor. All of this clearly appears in the recitals and in the resolutions passed by the society. We think this is a case in which the recitals in the deeds should be considered in determining the true intent and

meaning of the parties. This is not a new rule of construction but one that has been recognized for a century at least. It was restated by Mr. Justice GIBSON in Shurtz v. Thomas, 8 Pa. 359, in which it was said: "that general words of a releasor or grantor are to be restrained to the occasion; and that though they are to be taken most strongly against the releasor or grantor when they stand alone, yet that when they are preceded by an explanatory recital, they are to be interpreted in subordination to the general purpose." When the deed of 1893 is considered in the light of the recitals, the intention to grant a power of sale, with the right to reinvest the proceeds for the use of the society, and not to vest an absolute fee simple title in the trustees clearly appears. But we need not depend upon our own interpretation of the deed of 1893 because the donor in the deed of 1894 expressly states what her intention was and the trustees by accepting that deed acquiesced in its purpose and are bound by the intention so declared. From all of which it follows that the trustees have the power to sell and convey the premises in question free and discharged from all trusts and conditions, but that the proceeds arising from the sale must be held or invested by the trustees for the use and benefit of the Horticultural Society in accordance with the wish of the donor as expressed in her deeds of conveyance.

We all agree with learned counsel for appellee that the lease of November 28, 1894, is not a charge or encumbrance within the meaning of the condition annexed to the grant in the deed of 1887. The condition withheld from the trustees the power to "sell or convey, alienate, encumber or charge" the property conveyed by the deed. The trustees have not undertaken to sell, convey, or alienate the premises. They have not encumbered or charged the property with the lien of any indebtedness. They have leased it for a term of years for the very purpose of preserving the trust in order to carry out the wishes of the donor. In her deed of 1887 the donor re-

cites the consideration moving her to make the grant as follows: "In testimony of her love and affection for her late brother William L. Schaffer, and her desire to preserve his memory by establishing in a permanent manner the Pennsylvania Horticultural Society, in which he was for many years deeply interested." The efforts of the trustees have been directed towards the accomplishment of this purpose by establishing a permanent place for the meetings, exhibitions, receptions and other proper uses of the society. The lease of 1894 is in aid of this purpose. The Horticultural Society under the terms of that lease have every use of the building contemplated by the donor, and this is accomplished without subjecting the premises to such a lien as could be reduced to judgment for the purpose of execution. When it is recalled that the trustees in express terms were given the power to lease, collect and receive rents, and to exercise general supervision over the building; and when the trustees in the exercise of that power did execute the lease in question, it is difficult to understand why their act in so doing should be deemed such a breach as to cause a reversion of the estate for condition broken. Indeed, even without the express power to lease, trustees have a general power of leasing, if the lease does not exceed the quantity of the estate held in trust and is reasonable. A perpetual lease will not be set aside in a collateral proceeding unless clearly unreasonable or detrimental to the beneficiary. This doctrine is very generally recognized and is aptly stated in 2 Perry on Trusts 790. In the case at bar the lease does not exceed the quantity of the estate; it in our opinion is not unreasonable; nor is it detrimental to the beneficiary. It is not a perpetual lease, but for a period of thirty years, during all of which time the Horticultural Society is protected in the enjoyment of every use contemplated by the donor. What more could the trustees have done under the circumstances? The old hall had been destroyed by fire and it required more money than the society could

command to rebuild. The lease was made to secure the holders of the certificates who furnished the money to rebuild and this is their only security. The result of what was done gives the Horticultural Society a permanent and attractive place in which to hold their meetings, exhibitions and receptions, and this is what the donor desired as a testimonial to her brother. If the contention of appellant should prevail the purpose of the donor will be defeated, because in such event the estate reverts under the residuary clause of her will and the right of the Horticultural Society to use and enjoy the property will no longer exist. Nothing would more completely frustrate the wish of the donor than to sustain the contention of appellant that the title reverts and passes under the residuary clause of her will. This would destroy what she intended to establish as a testimonial to her brother. This view is further emphasized by additional clauses in the deed of 1887. The condition not to sell, convey, alienate, encumber or charge the property is immediately followed by a provision requiring the trustees to reconvey if, (1) the society shall cease to require or use the property; and, (2) if for any cause the society shall go out of existence. Evidently the donor had in mind a reconveyance by the trustees rather than a reversion by operation of law, but neither she nor her devisee could compel a reconveyance unless the society ceased to require or use the property, or went out of existence as a corporate body. The society has not gone out of existence and does require and use the property. The conditions have not arisen upon which anyone can assert the right to demand a reconveyance. Conditions of this kind are strictly construed and properly so. When an estate of freehold is to be divested and the grantor re-instated, the burden is on him who asserts the right to re-enter to show the breach of the precise conditions upon which the estate reverts. All authorities hold that conditions of this kind are construed with great strictness. When so construed there is nothing in

the present case to show such a breach as to warrant either a re-entry or a re-conveyance for condition broken.

Our conclusion is that the trustees under the deed of 1893, read in connection with the deeds of 1887 and 1894, hold the title in fee to the premises in dispute in trust for the uses and purposes of the Horticultural Society, and that they can sell and convey the same free and discharged of all trusts and conditions and without liability on the part of the purchasers to see to the application of the purchase money. If the trustees sell and convey the property it shall be their duty to re-invest the proceeds in real or personal property as they may deem best, and when this is done they shall "hold the same upon the same trusts as were in said deeds (1887, 1893 and 1894) set forth with like power of sale and re-investment from time to time, as the proper execution of the trust may require." But so long as the trustees hold the title to the premises in controversy here, it is to be held for the uses and upon the trusts set forth in the deed of 1887.

This view necessarily makes the duties of the trustees active and is an answer to the contention that the trust being dry there should be a conveyance direct to the beneficiary. The property was conveyed in trust; the grant was accepted in trust; and the trustees have undertaken to perform their duties under the trust. Nothing has occurred to warrant a court in declaring the trust at an end and in decreeing a conveyance to the beneficiary.

We cannot therefore agree with the learned court below that for the reasons stated in the opinion of that court, or for any other reason, a conveyance of the fee simple title free and discharged from all trusts and confidences by the trustees to the appellee should be decreed.

Decree reversed and bill dismissed at the cost of appellee.