## Erie *v.* Pennsylvania Railroad Company, Appellant.

*Railroads—Municipalities—Grant of land for railroad purposes—Estate upon condition—Waiver of conditions—Ground granted but not used for railroad purposes—Question for jury—Ejectment.*

Councils of the City of Erie in 1853 passed a resolution giving certain land owned by the city to a railroad company on condition that the land should be devoted to its proper corporate uses, and that the city should be the terminus of the railroad, and that the railroad company should build a pier within two years. The railroad company undertook the building of the pier and spent a large sum of money in its construction, but for some reason not explained the pier was not completed. The work that was done on the pier was done within the two year limit. In 1859, the pier not having been completed city councils voted to execute a deed conveying the property to the railroad company and this was done. Nothing was contained in the deed concerning the building of the pier, except as it appeared in the recital of the resolution of 1853. For sixty years the railroad company kept its terminus in the city and devoted a portion of the property to railroad purposes, but made no use of the remainder of the ground. *Held,* (1) that the railroad company took an estate upon condition subject to defeasance for condition broken; (2) that the city by the deed of 1859, the assessment of taxes for a long period of years, and the recognition of the title of the railroad company during all that time, waived the condition of the requirement of the building of the pier; (3) that the railroad company had a prima facie title to the whole of the tract, but this was only a prima facie title, and if the city could show that the necessities of the railroad company

did not require the entire tract for its corporate purposes, the right to re-enter and take possession of so much of the land as a jury might find was not necessary for the corporate uses of the railroad company clearly existed, and that in the determination of this question not only the present but the future necessities of the railroad company must be considered.

Argued April 27, 1914. Appeal, No. 360, Jan. T., 1913, by defendant, from judgment of C. P. Erie Co., Sept. T., 1907, No. 12, on verdict for plaintiff in case of City of Erie v. Pennsylvania Railroad Company and Philadelphia & Erie Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Ejectment to recover land in the City of Erie. Before BENSON, J.

The opinion of the Supreme Court states the case.

Verdict for plaintiff and judgment thereon. Defendant appealed.

*Errors assigned* were various instructions of the court.

*John G. Johnson,* and *U. P. Rossiter,* of *Rossiter, Thompson & Rossiter,* with them, *Francis I. Gowen,* for appellant.—The railroad company is the sole judge of how much land is required for its use, and if it decided that any particular quantity was required, that conclusion could not be gainsaid by a jury: Pittsburgh, Fort Wayne & Chicago Ry. Co. v. Peet, 152 Pa. 488; Pittsburgh Junction Ry. Co.'s App., 122 Pa. 511; L. S. & M. S. Ry. Co. v. Ry. Co., 8 Fed. Repr. 858; Shepley v. Lytle, 6 Watts 500; Barlow v. Ry. Co., 29 Iowa 276; Nitzell v. Paschall, 3 Rawle 76; Bombaugh v. Miller, 82 Pa. 203; Henderson v. Cent. Pass. Ry. Co., 21 Fed. Repr. 358; Smethport R. R. Co. v. R. R. Co., 203 Pa. 176; Philadelphia, Wilmington & Balt. R. R. Co. v. Williams, 54 Pa. 103; Cleveland & Pitts. R. R. Co. v. Speer, 56 Pa. 325; Philadelphia v. Ward, 174 Pa. 45; Hummel v. Cumber-

land Valley R. R. Co., 175 Pa. 537; Folk v. State Capital Savings & Loan Assn., 214 Pa. 529.

If the conditions imposed by the deed were not performed the city was cognizant of the fact for more than forty years, and acquiesced in such nonperformance, and was, therefore, estopped from setting up such nonperformance as a breach: Daniels v. Tearney, 102 U. S. 415; Randolph County v. Post, 93 U. S. 502; Penna. R. R. Co.'s App., 125 Pa. 189; Philadelphia Trust, Safe Deposit & Ins. Co. v. Coal & Iron Co., 139 Pa. 534; Todd's App., 24 Pa. 429; St. Andrew's Church's App., 67 Pa. 512; Thomas's Est., 184 Pa. 640; Norris v. Haggin, 136 U. S. 386; Roberts v. Tunstall, 4 Hare 257; Twin Lick Oil Co. v. Marbury, 91 U. S. 587; Speidel v. Henrici, 120 U. S. 377; Lemoine v. Dunklin Co., 38 Fed. Repr. 567; Prevoste v. Gratz, 6 U. S. 481.

*Henry A. Clark* and *Charles P. Hewes,* with them *Charles H. English,* City Solicitor, for appellee.—The railroad company had only a reasonable time in which to determine how much land it would need at the place in question: Plymouth R. R. Co. v. Colwell, 39 Pa. 337; Allegheny v. O. & P. R. R. Co., 26 Pa. 355; Hamilton v. Elliott, 5 S. & R. 375; Daubert v. Penna. R. R. Co., 155 Pa. 178; Shellar v. Shivers, 171 Pa. 569; Hayden v. Stoughton, 22 Mass. 528; Gray v. Blanchard, 25 Mass. 284; Junction Passenger Ry. Co. v. Williamsport Pass. Ry. Co., 154 Pa. 116; Parks v. Whitney, 10 N. E. Repr. 161; Raynor v. Syracuse University, 71 N. Y. Supp. 293.

OPINION BY MR. JUSTICE ELKIN, July 1, 1914:

This is an action of ejectment for certain described lands located in the City of Erie. The city obtained its title by a grant from the Commonwealth but subsequently conveyed to the railroad company for its corporate uses. The uses were particularly specified in the grant, and this enumeration was followed by the general provision that the land was to be held and enjoyed not only

for the specified uses, but "for such other objects as appertain to the legitimate business of said company authorized by their charter or act of incorporation." From this it clearly appears that the grant was made for certain specified and limited uses. It is not contended that the railroad company has diverted the land conveyed to uses not contemplated by the grant, but it is complained that only a small portion of the entire tract is being used for the corporate purposes of appellant and that in any event, under the conditions of the conveyance, the railroad company has the right to use only so much of the land as may be necessary for its corporate purposes. This question will be discussed later.

The first question to be determined is the nature of the estate granted. Was it an absolute estate in fee simple with all the incidents of ownership, including the right to sell and convey, or was it an estate upon condition subject to a defeasance for condition broken? We think the deed itself answers this question. It was a grant of land to be used and enjoyed by the railroad company for its corporate purposes. The deed read in connection with the resolution of 1853, and these must be construed in pari materia, means that the land in question was to be used for such purposes as appertain to the legitimate business of the railroad company under its charter powers. The conditions annexed to the grant were valid and binding upon the parties. They are not a restraint upon alienation, nor do they violate the rule against perpetuities: Penna. Horticultural Society v. Craig, 240 Pa. 137. The railroad company accepted the conveyance subject to the conditions, and the city clearly has the right to re-enter for condition broken, unless there be a waiver or an estoppel. The railroad company however has the prima facie legal title to the property and is in possession of the same. It has been in possession and enjoyment of the land, exercising the rights of ownership, paying taxes, occupying a considerable portion of it for proper corporate purposes for more than sixty years.

In this situation the burden was on the city to show a clear right to re-enter. The first question for decision is whether the city bore the burden by making out a prima facie case. All that was shown as to the use of the land was that a large part of it was not at present used for railroad purposes, or indeed for anything else. As to the use of the land there was no condition broken. Whether under the terms of the grant the railroad company is entitled to hold all of the land when it only uses part of it is another question. The terminus of the railroad still continues to be in the City of Erie and hence there is no breach of condition in this respect. The pier although commenced was never completed, and in this respect a condition of the grant was broken. Does this give the city the right to re-enter? The answer must be in the affirmative unless the city waived the condition, or by its acts is estopped from asserting the right to claim title and possession. Did the city waive the condition requiring the building of the pier; if it did it cannot assert the right to re-enter on this ground. In this connection we can only discover the intention of the parties by what they did. The councils of the City of Erie in 1853 passed a resolution giving the land in question to the railroad company on condition that the land should be devoted to its proper corporate uses, that the city should be the terminus of the railroad, and that the railroad company build a pier. The railroad company undertook the building of the pier and spent a large sum of money in its construction, but for some reason not explained by the testimony the pier was not completed. The resolution of 1853 required the building of the pier within two years from that time and the work that was done on it must have been within the two-year limit. It was then abandoned but the record does not disclose why. However, in 1859, the pier not having been completed, and so far as we are advised by the record work on it having been entirely abandoned, city councils again took up the subject evidently with the intention of finally

adjusting the matters in controversy between the city and the railroad company. At that time the building of the pier was the only matter that could have been in controversy because the railroad company was not attempting to divert the land from the declared uses, the city still remained the terminus and the only matter about which the city had the right to complain was failure to complete the pier. This was the situation when both chambers of city councils voted to execute a deed conveying the property to the railroad company. In that deed nothing is said about the building of a pier, except as it appears in a recital of the resolution of 1853 upon which the action of councils was based. But it must not be overlooked that this recital of the resolution of 1853 contained the requirement that the pier be built within two years. This limit had expired several years before council took action and executed the deed of 1859. Clearly councils must have intended to waive the limitation of two years when they voted to make a deed of conveyance to the railroad company. There is no escape from the conclusion that the limitation of time for the building of the pier was waived by making the deed of 1859. If this condition was waived it would seem to be a reasonable inference that other conditions relating to the building of the pier were likewise waived. The inference is strengthened by the fact that the covenants of the deed of 1859 are silent on the subject of building the pier. When councils met in 1859 to consider this question they were confronted with the situation that the pier was not built, that work upon it had been abandoned, and yet notwithstanding these facts, they voted to make the deed and subsequently executed it without any express provisions requiring the building of the pier. The railroad company had then been in possession several years and has continued in that possession to the present time. After the delivery of the deed the city did not attempt to disturb the railroad company in the

exercise of its rights of ownership, but recognized its title by the assessment and collection of taxes. This situation has remained undisturbed for more than half a century. The city has not demanded the building of the pier, has not disputed the possession of the railroad company, and until this suit was instituted has acquiesced in the assertion by the railroad company of its ownership and right of possession. Under these facts we feel it to be our duty to declare as a matter of law that the city by the deed of 1859, the assessment of taxes for a long period of years, and the recognition of the title of the railroad company during all that time, must be held to have waived the condition requiring the building of the pier.

What has been said disposes of most of the questions raised by this appeal. It is necessary however to advert to another question which has been incidentally raised, but which is of importance if the case be again tried. It is clear from the resolution of 1853 and the recitals in the deed of 1859 that the grant was only intended to give the railroad company the entire tract if all of the land conveyed were necessary for its legitimate corporate purposes. The entire tract was granted and therefore the railroad company has prima facie title to the whole of it. But this is only prima facie and if the city can show that the necessities of the railroad company do not require the appropriation of the entire tract for its corporate uses, the right to re-enter and take possession of so much of the land as a jury may find is not necessary for the corporate uses of the railroad company clearly exists. In the determination of this question not only the present but the future necessities of the railroad company must be considered. This is a question of fact and can only be determined upon the testimony that may be offered relevant to this important inquiry. The burden will be upon the city to show what part of the land is not required for the uses, purposes and necessities of the railroad company.

We do not agree with the contention of the learned counsel for appellant, that under the terms of the grant, the railroad company may at any time in the future, no matter how remote, claim the right to make use of any portion of the tract not at present appropriated to corporate uses, and that the right to exercise this privilege being unlimited as to time and indefinite in duration, the whole tract must be held intact under the deed of 1859 until the railroad company chooses to act and make use of the land for the purposes enumerated in the conveyance. It is true the resolution of 1853, which was recited in the deed of 1859, did contain a provision giving the railroad company the right to appropriate "at any time" so much of the land as was necessary for its corporate uses. The phrase "at any time" must be understood to mean "within a reasonable time," and what is a reasonable time is a question of fact to be determined under all the facts and circumstances of the case. In this instance, the railroad company has already had sixty years in which to exercise its rights and privileges in this respect, and cannot now complain that sufficient time has not been allowed to decide what its necessities may require. This question can be raised in the present action and when the evidence is offered it will be for the jury to decide how much land, if any, in addition to that part of the tract already actually appropriated may be necessary, not only for the present, but for the future uses of the railroad company. The railroad company cannot arbitrarily hold possession of the entire tract, if only a fourth, a third, or a half of it is required for its corporate purposes; nor can it refuse to take any action in the matter until such time as the board of directors choose to act. This question may be decided now and in this present action. The railroad company will not be limited to the exact amount of land in actual use, but may show what its future necessities at that point may

reasonably require. This will then become a question of fact for the determination of the jury.

The case was tried on the wrong theory in the court below and this has resulted in much confusion. But according to our view as above indicated it is unnecessary to consider the assignments of error in detail and discuss the questions brought to our attention.

The one question that is left for determination is whether the necessities of the railroad company require the use of the entire tract; if not how much of the tract is required to meet its necessities and how much may revert to the city.

Judgment reversed and a venire facias de novo awarded.