# Eavenson's Appeal.

1. During the lifetime of testator, in his presence and by his direction, various sums of money due him were paid to his son-in-law and the wife of the latter with whom the testator resided. After the testator's death an attempt was made to surcharge the son-in-law, who was an executor, with the sums so received : *Held*, that in the absence of proof to the contrary the money must be presumed to have passed into the actual possession of the testator.

2. The testator lived on his own farm with his son-in-law, the wife of the latter having charge of the household arrangements, the testator bearing a portion of the expenses, and the son-in-law receiving a portion of the receipts of the farm which he tilled : *Held*, that the son-in-law could not be surcharged with the rent of the farm.

3. Real estate will not be charged with the payment of debts and legacies, where the personal estate is more than sufficient to pay the same, unless the intention to charge the real estate and exonerate the personal estate is clearly manifest.

March 22d 1877. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. SHARSWOOD, J., absent.

Appeal from the Orphans' Court of *Chester county :* Of January Term 1877, No. 13.

This appeal was from the decree of the court confirming the report of an auditor appointed to report upon exceptions to the accounts of the executors of George Eavenson, deceased.

Joseph Eavenson and George Wood were the executors of the will of George Eavenson, who died at about the age of eighty-eight years, in November 1870. Joseph Eavenson was the son and George Wood the son-in-law of the testator. His executors proved his will, which was made in April 1869, and filed a joint account. When the account was prepared for filing, it appeared

that there were differences between the executors, both as to the liabilities of the executors to the estate and as to the construction of the will affecting the distribution of the residue. They, therefore, agreed that either of them might file exceptions to the account, and that the court should be asked to appoint an auditor to hear and report upon the exceptions and make the proper distribution of the estate.

Both executors excepted to the account, and William Waddell, Esq., was appointed auditor. He heard the exceptions, reported thereon and made distribution. From his final report, which was affirmed by the court, Joseph Eavenson took this appeal. The questions embraced by his exceptions are contained in the following propositions:—

1. In 1860 the wife of George Eavenson died, and Mr. Wood, who had married one of his daughters, thereupon removed with his wife and family to the dwelling and farm of the testator, and from that time forward, until the death of testator, they lived together in his house. The testator bore a share of the expenses of the household, and Wood tilled the farm, receiving in compensation a share of the crops and other profits arising therefrom. The material evidence in relation thereto and the division made will be found in the opinion of this court.

Joseph Eavenson claimed that Wood should be charged with the rent of said farm for at least six years before the death of the testator.

The auditor refused to so charge him.

2. During this residence of the testator with his son-in-law and daughter various sums of money were received from different persons for said testator, a great part of which was interest on bonds and notes received during the last few years of testator's life, at which time there was evidence that he was considerably enfeebled by disease and increasing infirmities.

It was admitted that these sums of money were paid to Wood or his wife in the presence of the testator and at his instance.

The appellant contended that Wood was bound to account for these moneys and should be charged with them, which the auditor also refused.

The testator in his will provided as follows:—

" First, I direct that all my debts and funeral expenses be paid as soon after my decease as possible, out of the first money that shall come into the hands of my executors. To the children of my daughter, Ann Boothe, Joseph, Charles, Mary and Sarah, I give and bequeath to each one named, the sum of five hundred ($500) dollars. To the remaining child of my daughter Sidney, Sarah Hannum, I give and bequeath the sum of five hundred ($500) dollars. To my daughter, Phebe Foreman, I give and bequeath the interest of fourteen hundred ($1400) dollars, which sum shall re-

main in my real estate, the interest of which shall be regularly and annually paid to her, at the rate of five per cent per annum, and at her death, the said sum of fourteen hundred ($1400) dollars, to be divided equally between her two children, George and Sarah; but in case of the death of these two children, the money to return to my estate as reversions. To my daughter Lydia, and son-in-law, George Wood, I give and bequeath the real estate hereinafter described." [Here follows a description thereof.] "All my real estate west of this line, I will and bequeath to my daughter, Lydia, and son-in-law, George Wood, clear of all encumbrance. I also give and bequeath to my daughter, Lydia, and son-in-law, George Wood, the woodland hereinafter described." [Here follows the description.] "This tract of land I also bequeath clear of all encumbrance. To my son, Joseph Eavenson, I give and bequeath the balance of my real estate, subject to the payment of all my debts, and the amount of money hereinbefore mentioned, as bequeathed to the children of Ann Boothe, Sidney Hannum and Phebe Foreman, the amount fourteen hundred ($1400) dollars before mentioned, to lay in this real estate, and the interest to be regularly and annually paid to her during her life, and at her death to be disposed of as before mentioned. After all debts and bequests are paid, it is my will that should there be any reversions, that they be equally divided between my son, Joseph Eavenson, and my daughter, Lydia, and son-in-law, George Wood, executors of this, my last will and testament. And I do further say, that it is my will, that should any one that I have mentioned in this, my last will, file any objection or raise any suit whatever, that they shall forfeit everything that I may have willed and bequeathed to them, and should this be the case, the money so bequeathed shall return to my estate as reversions."

Joseph Eavenson claimed that the legacies to the children of Ann Boothe, Sydney Hannum and Phebe Foreman should be paid out of the personal estate, while Wood and his wife contended that these legacies were a charge upon the land devised to Joseph Eavenson, and the balance of the personalty was to be divided without regard to them.

The auditor sustained the latter contention, and the court supported this view of the auditor in an opinion, saying, "This exception involves a construction of the will. The rules applicable are plain. The testator's intentions must be carried out if discernible; the clauses involved must be reconciled if possible. Looking at the whole instrument, considering the several devises and bequests, and keeping in view the presumption that equality among his children was intended, it seems clear that the testator designed the debts and legacies to be paid from Joseph's devise. He says so in plain terms, and with evident knowledge of their import. The devises to Lydia and her husband are both declared to be "clear of encumbrance."

But Joseph is to take " his, subject to the payment of all just debts" and " the amount of money hereinbefore mentioned, as bequeathed to the children of Ann Boothe, Sidney Hannum and Phebe Foreman, the amount of $1400, before mentioned, to lay in the real estate, the interest to be paid regularly and annually to her during life, and at her death to be distributed as before mentioned." Previously, in making the bequest to Phebe, he had directed that " this legacy should remain in (his) real estate." The design to take the debts and legacies from this land, the $1400 remaining in it until Phebe's death, is thus put beyond doubt. And there is nothing to indicate that this design was abandoned. The subsequent provision is unnecessary, but not in conflict with it. The testator had provided for the debts and legacies, and this provision was presumably sufficient. It subjected the land to their payment, but not the devisee personally. If the land failed, the second source of payment would be reached, the residuary legatees taking the balance. If no part of the personalty should be needed for this purpose, the whole of it would be residue, and thus distributable. We do not intimate that the testator contemplated exhaustion of the land by debts and legacies. We have no idea that he did. But such, in our judgment, is the legal reading of the two provisions. Thus they may stand together, and the manifest design of the testator be carried out.

The exceptions to the report of the auditor were then dismissed and his report confirmed; and from this decree this appeal was taken.

*Joseph J. Lewis* and *Wayne Mac Veagh*, for appellant.—The primary fund for the payment of all legacies, whether charged on land or not, unless special provision is made to the contrary, is the personal estate : Breden *v.* Gilliland, 17 P. F. Smith 38 ; Groff's Appeal, 9 Wright 383 ; Powell on Devises, vol. 2, page 682.

.There being personal estate sufficient to pay all debts and legacies and that being the primary fund for such payment, the charge upon the land devised does not alter the established order of the application of the several funds to those subjects to which they are ordinarily liable, but makes the land burdened with the charge an auxiliary fund, to which resort may be had in the event of the personal fund proving insufficient or unavailable

*William Darlington* and *Oliver Sidwell*, for appellees. — The testator intended to charge Joseph's devise with the debts and legacies and not charge Lydia's. These express provisions are sought to be gotten rid of, by supposing the testator meant differently by the clause giving the reversions, after debts and bequests paid, to Joseph and Lydia. But an *express* charge or discharge

cannot be controlled by any *conjectural* intent to the contrary. If it could, no clearly expressed wish of the testator could ever be certain to prevail. Effect can, however, be given to the bequest of the residue, in the event of Joseph's land being insufficient to pay the charges upon it. In such event, Joseph and Lydia must each bear their share of the burtheh.

Mr. Justice PAXSON delivered the opinion of the court, May 7th 1877.

The second, third and fifth assignments of error raise the question whether George Wood, one of the accountants, is under any duty to account for certain sums of money received by him and by his wife for George Eavenson, the testator. There is no dispute about the facts. It is conceded that the sums of money in question were paid to Mr. Wood, or to his wife, in the presence of the testator and by his direction. This, the appellant contends, is sufficient to cast upon Mr. Wood the duty of accounting in some way for the money. The learned auditor declined to surcharge him with these payments, in which he was sustained by the Orphans' Court. We see no error in this ruling. The payments referred to were payments to George Eavenson. That they were received by the hands of his daughter or her husband is not material. The money was paid in the presence of the testator. The Woods were merely his servants so far as these transactions were concerned. In the absence of any evidence to the contrary the money must be presumed to have passed into the actual possession of the testator. If the Woods embezzled it, that fact must be shown. The law raises no such presumption.

We do not think the attempt to surcharge Mr. Wood with the rent of the farm for the last ten years of the life of the testator can be sustained. This is not the case of a tenant who has bound himself to pay a certain rent. It appears that in 1860 the wife of George Eavenson, the testator, died. At that time he was about seventy-eight years of age. Shortly after the death of Mrs. Eavenson, Mrs. Wood, a daughter of this aged couple, removed with her husband to the dwelling of the testator. Mr. Wood took charge of the farm ; Mrs. Wood attended to the domestic arrangements. The testator had become infirm, and he lived in the family of his son-in-law. No agreement in writing appears to have been entered into, but the arrangement between them sufficiently appears by the testimony of Samuel Cann. He says : " George got one-third of the grain ; old man found all the meat and flour ; he had the profit of feeding steers ; Wood had the profit of cows and chickens ; Wood found groceries ; I had this from old man and Wood both." From this it is manifest that Wood was a mere cropper. The testator remained in possession ; lived with his son-in-law, and contributed to the expenses of the house. Each was to have a certain share

of the products of the farm.   Each was upon the premises to look after his own.   In the absence of any evidence to the contrary, each must be presumed to have received his own..   We see no more reason why Wood should account for the testator's share than that the testator should account for Wood's share.   It would seem incredible that this testator should have failed in getting his share of the crops for the ten years that he lived with his son-in-law. That he did receive his share, appears with reasonable certainty from his own books, in which is set forth his income from farming operations for several years of the period referred to.   There is a· debtor and creditor account carefully kept, showing the amount of produce received and the prices realized therefor.   It is not material that this account was kept for the purpose of enabling the testator to make his income return.   It is sufficient that it was the testator's account; that it shows that he received and sold his share of the produce, and that it has not been contradicted.

The seventh and eighth assignments present a question of more difficulty.   Briefly stated it is whether the debts and legacies are to be paid out of the personal estate, or from the real estate devised to Joseph Eavenson.   That the personal estate is the primary fund for the payment of debts and legacies is horn book law.   A testator may, however, direct otherwise : McFait's Appeal, 8 Barr 290. Has the testator evinced a clear intention not only to charge the debts and legacies upon the real estate of Joseph, but also to exonerate the personal estate ?   He first directs that "all my debts and funeral expenses be paid as soon after my decease as possible, out of the first money that shall come into the hands of my executors." He then makes sundry bequests of $500 each to grandchildren, and the interest of $1400 to his daughter Phebe Foreman for life, said sum to remain in the testator's real estate.   He then devises certain real estate to his daughter Mrs. Wood and her husband.   This devise is expressly stated to be " clear of all encumbrances."   Then follows a devise to his son Joseph of " the balance of my real estate subject to the payment of all my debts and the amount of money hereinbefore mentioned as bequeathed to the children of Ann Boothe, Sidney Hannum and Phebe Foreman, the amount fourteen hundred ($1400) dollars before mentioned to lay in this real estate, and the interest to be regularly and annually paid to her during life, and at her death to be disposed of as before mentioned." Then comes the bequest of the residue, in these words : " After all debts and bequests are paid, it is my will that should there be any reversions, that they be equally divided between my son, Joseph Eavenson, and my daughter, Lydia, and son-in-law, George Wood,. executors of this my last will and testament."   There is an apparent repugnancy in these provisions.   It is our duty to give effect to the intention of the testator so far as it can be ascertained and to reconcile seeming inconsistencies.   One thing is clear.

[Eavenson's Appeal.]

The testator intended that in no event should the real estate devised to the Woods be charged with the debts and legacies. He says that said real estate shall be clear of all encumbrances. On the other hand the devise of the residue of his real estate to his son, Joseph, is subject to all the testator's just debts, and the legacies referred to. It is provided that the sum of $1400, the interest of which is payable to Phebe Foreman, "shall lay in this real estate." What did the testator mean by this clause in his will? The auditor and the court below held that he intended to charge Joseph's real estate as the primary fund for the payment of debts and legacies and to exonerate the personal estate altogether. In reaching this conclusion the learned judge of the Orphans' Court assumes that the testator intended equality among his children. I am unable to gather such intention from the will. It nowhere appears that he contemplated making one child equal with any other child. On the contrary he gives his daughter, Mrs. Foreman, only the interest of $1400 during life. To the children of his deceased daughter Ann, he gives $2000, and to the child of his daughter Sidney, he gives only $500, while to his daughter Lydia he gives a valuable farm clear of encumbrances. No reason is given for such distinction. No doubt a satisfactory one existed. Be that as it may, it disposes of the idea that the testator intended equality. Did he intend to exonerate his personal estate from the payment of debts and legacies? It is not enough to show that he charged them upon a portion of the realty. It must also appear that he intended to exonerate the personalty. It is not the intention to charge the real estate that exempts the personal, for charging the real estate without more, will not have that effect. It must appear, not only that the real estate is intended to be charged, but that the personal estate is intended to be exempted : 1 Roper 699. The rule is thus clearly stated in Breden *v.* Gilliland, 17 P. F. Smith 34 : "The primary fund for the payment of all legacies, whether charged on land or not, unless special provision is made to the contrary, is the personal estate." It was formerly held that the intention to exempt the personalty must be expressly declared. Such is not the rule now. It is sufficient if it appear by necessary implication, collected from a sound interpretation of the whole will. I have looked in vain through the will of George Eavenson for any evidence of a clear intent to exonerate his personal estate from the payment of debts and legacies. On the contrary the opposite view may not unfairly be gathered from his direction to pay his debts and funeral expenses out of the first money that should come into the hands of his executors, and the bequest of the residue, after the payment of debts and legacies. These provisions of the will are inconsistent with the idea of exempting the personalty. In charging the real estate of Joseph with the payment of debts and legacies, the testator probably intended no more than to make said

[Eavenson's Appeal.]

real estate an auxiliary fund, to be resorted to after the exhaustion of the personal estate, which is the primary fund. In addition, the testator did not intend that any portion of the debts and legacies should fall upon the real estate devised to Mr. and Mrs. Wood. That was to be "clear of encumbrance." He provided effectually against such contingency by making Joseph's real estate an auxiliary fund to the personal estate.

The amount of personal estate appears to be more than sufficient to pay debts and legacies. After the payment of all debts and legacies the balance of personal estate must be distributed under the residuary clause of the will. In this distribution Joseph Eavenson will be entitled to a credit for any portion of the legacies remaining as a charge upon his land.

> The decree is reversed, and the record remitted to the Orphans' Court, with directions to proceed to make distribution in accordance with the views contained in this opinion; the costs of this appeal to be paid by the appellee.