## Wilson Estate

Before Sinkler, P. J., Klein, Bolger, Ladner and Hunter, JJ.

*Robert E. Porter* and *W. Montgomery Forster*, for exceptant.

*T. McKeen Chidsey*, Attorney General, *F. Gilman Spencer*, special deputy attorney general, and *Arthur M. Cooper*, for Commonwealth.

BOLGER, J., February 14, 1949.—On May 25, 1945, conveyor paid off two bank loans by negotiating with the Girard Trust Company on that date a loan in the amount of $73,006.94. As evidence of the obligation, he gave the bank his demand note in that amount and assigned as collateral 10 life insurance policies, two of which were payable to his testamentary estate, of which the Girard Trust Company was executor, while in the others the same bank, as cotrustee, was named beneficiary. The note was in the standard bank loan form under which every other asset of the borrower in the hands of the bank, including deposit accounts, were pledged for the loan and all pledged assets for the loan were rendered subject to the lien of the bank for other loans. Thereupon, Mr. Wilson, decedent, decided apparently to arrange for the disposition of his wordly affairs. On May 27, 1945, he executed a lengthy deed of trust under which the Girard Trust Company became trustee. On the same date he executed his will wherein he provided that his executors should pay his just debts and gave his residuary estate to the Girard Trust Company as trustee under the deed executed by him the same day. The record, therefore, discloses that Mr. Wilson, as conveyor, occupied four capacities, debtor, pledgor, settlor and testator, while the Girard

Trust Company also occupied four positions, creditor, pledgee, trustee under the deed and executor of the will.

Upon the death of the conveyor, the executors paid the loan out of the testamentary estate, and as co-trustee received the proceeds of the policies of insurance, while the deposit account in the amount of $5,857.74 went into the testamentary estate. The hearing judge, upon appeal by the taxpayer from the decision of the register, sustained the register's conclusion that the testamentary estate was subject to collateral inheritance tax against the testamentary estate, on the ground that the language of certain recitals in the deed of trust directed the trustee to pay the bank indebtedness out of the insurance proceeds; that whereas such debt was paid by the testamentary estate, the Commonwealth is now entitled to require the executor to call upon itself as trustee under the deed to pay the equivalent of the debt to itself as executor under the will under its right of subrogation, thereby subjecting it to inheritance tax. The hearing judge disregarded the provision in the will directing the executor to pay his debts, terming this provision a general one, whereas he characterized the quoted language of the recitals in the deed as specific instruction to pay the loan.

The taxpayer insists in its exceptions that the question involved is the primary obligation of the testamentary estate to pay the debt and not the manner of payment and that the language of the recital provisions does not sustain the conclusion of the hearing judge.

Everyone admits that it was the duty of the executor to pay the debt and, therefore, the question is, as the hearing judge points out, *from what fund* did the testator intend this debt be paid?: Weissman Estate, 62 D. & C. 73. We must go further than the decisions in Kershaw Estate, 352 Pa. 205, and related cases, which hold that in collateral loans the primary obligation is not the collateral, but the note itself. These

cases do not in any way involve the question of testator's intention as to where the impact of the tax is to be ultimately borne.

We must be guided by two rules of law in weighing the exceptions. The first rule involves problems strictly between parties to the estate and exclude tax questions. In Shaffer's Estate, 262 Pa. 15, 18, it was held that a testator may direct as between his distributees upon whom or what property any obligation of his shall ultimately fall; and if they accept his bounty, they must do so cum onere; that it is undoubtedly true the personal estate is the primary fund for the payment of debts and he who asserts that any other part of the estate must be resorted to for that purpose has the burden of showing that such was testator's intention. Quoting from Eavenson's Appeal, 84 Pa. 172, 178, the court said:

" 'It was formerly held that the intention . . . must be expressly declared. Such is not the rule now. It is sufficient if it appear by necessary implication, collected from a sound interpretation of the whole will.' "

This rule is similar to that enunciated in Crone's Appeal, 103 Pa. 571, which declares that ordinarily testator's debts shall be paid primarily out of personalty rather than realty, and Jackson's Estate, 337 Pa. 561, and related cases dealing with blending. The other principle involves the application of the taxing power of the Commonwealth. Where there is a doubt or uncertainty as to the imposition of a transfer inheritance tax, that doubt or uncertainty should be resolved in favor of the taxpayer: Krause's Estate, 325 Pa. 479.

The opinion of the hearing judge states the recitals in extenso. Briefly, they relate: (1) The policies of insurance are collateral for the loan; (2) other collateral is also held by the creditor bank rendering the amount of the obligation on the policies "indeterminable"; (3) the trustees are to be alternate bene-

ficiaries and may receive the proceeds after the debt has been paid in full.

Before commencing the search for clues or expressions of the conveyor's intention, we must weigh the subject of it. Was it something important or unimportant; was it obvious or obscure; did it benefit or burden his estate? The substantial amount of the debt and of the tax testifies both to its importance and to its burden to the estate. Conveyor was alert to this because he made two policies of insurance exceeding $16,000 in amount payable to his estate and in his will he authorized his executor to borrow from the trust estate if necessary to pay taxes. It was obvious because conveyor must have known that if the proceeds of these policies were not used to liquidate the loan they would be paid free of inheritance tax by the insurance company to the bank as trustee beneficiary. It is against all human experience to assume that a man in this position would gratuitously waive this exemption and thereby do such great violence to what is otherwise a harmonious testamentary scheme. Therefore, we should expect and require an unusually high degree of clarity in weighing any implication that might be drawn from conveyor's expressions that this debt was to be paid from the proceeds of the insurance policies.

In the search to ascertain Mr. Wilson's intention, it is not disputed that the entire record, including these two instruments, must be read together. The 12-page deed of trust and the 17-paragraph will are carefully drawn instruments. They are highlighted by one paramount fact, the obligation on Mr. Wilson's note to the bank, because the bank as creditor on this note and as pledgee of the policies of insurance always held the whip-hand and, therefore, had the choice as holder of the note to demand payment from itself as executor or as cotrustee: Camden National Bank v. Fries-Breslin Co., 214 Pa. 395.

The first instrument to be examined for the ascertainment of Mr. Wilson's testamentary intent is his will. Therein he directs his executors to pay his just debts. The opinion judge gives this practically no weight, but utterly disregards it, because he says it is only a general direction. It is true that such a provision is a formal one and is ordinarily unnecessary because it is the statutory duty of the executor to pay creditors without specific instruction. That refers, however, only to the *absence* not to the *presence* of such provision. A direction to pay debts is often given great weight. For instance, in the cases involving the doctrine of blending in the exercise of powers of appointment, its presence in a will was held, before the Act of May 16, 1929, P. L. 1795, which abolished inheritance taxes on blended estates, to constitute a valid exercise of the power: McCord's Estate, 276 Pa. 459. Likewise, a direction in a married woman's will that her funeral expenses and debts be paid relieves her husband who would otherwise have to pay them: Melot's Estate, 231 Pa. 520. Comparable weight should be given this phrase in the instant case.

Here the express direction to pay debts is made part of a series of instruments constituting the testamentary scheme and there is no specific direction to the contrary in any of them, except the ambiguous language of the recitals in the deed of trust. Even though these recitals were specific and not ambiguous, they should not prevail over the clear language of the will which must be regarded as an operative part of the record of the transaction. A recital is not a necessary part of a deed and where the recital and the operative part of the deed conflict, the operative part prevails if certain and definite: Ontelaunee Orchards, Inc., v. Rothermel et ux., 139 Pa. Superior Ct. 44, 50. Therefore, we conclude that the hearing judge erred in disregarding the direction in the will to pay debts.

The deed of trust is in the usual form. It contains recitals by way of introduction, assigns the policies to the trustees for the purposes and estates named therein, describes the trustees' powers and certain reservations by settlor. The normal approach to the ascertainment of any intention by conveyor would be to look to the substantive parts of the deed, giving little weight if any to the introductory or recital language. The position of the Girard Trust Company in this deed becomes important at this point. We must assume that because of the existence of the indebtedness for which policies of insurance were pledged as collateral, the Girard Trust Company would not have countenanced any provision in any one of the instruments now before the court which would have impinged upon its rights or remedies as creditor. Any provision that would have restricted the Girard Trust Company as creditor to the satisfaction of its debt exclusively from the proceeds of the policies of insurance would have met with instant rejection by the bank, because human experience indicates that claims of assignees of insurance policies are oftentimes met with defenses by the insurance company. Prudent lenders always avoid litigation. The fact that the Girard Trust Company, as creditor, paid itself out of the testamentary estate instead of awaiting the collection of the proceeds of the insurance, substantiates this conclusion. Therefore, if the conveyor intended the Girard Trust Company as trustee to do something that did not apply to the Girard Trust Company as creditor and pledgee, it should appear with great clarity in the deed.

We are of opinion that the language of these recitals contains no clear or necessary implication that the debt be paid from the proceeds of the policies. At best the authority contained in them is ambiguous. References to the payment of the debt are contained in certain words which are merely parts of phrases, but which

when read completely, individually or collectively, do not sustain the position of the hearing judge. To illustrate, part of the second clause reads as follows: ". . . the amount of the proceeds of the above-mentioned policies which will be used in payment of said loan. . . ." Standing alone this language might properly be construed as an intention that the proceeds be used to pay the debt. However, this language is preceded by the phrase, "whereas other security is also held by the Girard Trust Company as a result of which . . .", and it is succeeded by the following words: ". . . is at present indeterminable and. . . ." Clearly, the supplied phrases refer to two additional considerations: (1) That other collateral was assigned for the loan in addition to the policies and that such other collateral would be utilized for the payment of the debt, and (2) such use of the other collateral, if so employed, will render the amount of the insurance necessary to complete the payment "indeterminable". The natural inference to be drawn from this clause, therefore, would be that the priority of payment would be from the other security, which was part of the testamentary estate, before the policy proceeds were to be utilized for the payment of the debt. The third introductory clause of the deed states that the trustees as alternate beneficiaries under the policies "may receive the proceeds thereof after the claim or claims of the Girard Trust Company have been paid in full." The controlling fact is that *nowhere* is there any statement of the source from which the debt shall be paid. To find that this language required the payment of the loan out of the proceeds of the policies is to guess and cannot be said to be clear implication.

It is significant that the transaction of the loan was an open-ended one, that is to say that Mr. Wilson, with the approval of the bank, could exchange collateral; he made withdrawals from his bank account with

perfect freedom, leaving $5,000 therein at his death. A distinctly negativing factor is that paragraph 1 of the deed of trust recites that "The trustees agree to accept all or any portion of the proceeds of the policy." Obviously, all of the policies could not be received by the trustees if the debt had previously been deducted from them.

The taxpayer here is not guilty of employing a devise to evade tax. There is nothing in the record to prove fraud or lack of good faith. The primary purpose was to protect and to pay the loan. Everything else that was done was incidental. It is not our prerogative to restrict in any way the remedies of a creditor in the collection of his debt or to dictate the channel through which he must proceed and it would be presumptuous for us to hold that it would be against public policy to permit the taxpayer in so doing to legally avoid the payment of inheritance tax in a legitimate business transaction. It is quite possible that had the Girard Trust Company not collected its debt from the testamentary estate, but from the insurance proceeds, the beneficiaries under the deed might have had good ground for surcharge to the extent of the inheritance tax to which the estate would have been exposed.

The hearing judge misinterprets part of the decision in Kershaw Estate when he states: "The executors who paid the debt had a right of subrogation against the trustee under the deed and this right, under Kershaw Estate, supra, may be regarded as a taxable asset which offsets the deduction of the debt." Kershaw Estate, supra, does not involve the right of subrogation. The equitable right there was contribution, for one half of the tax on the debt, which derived from the widow's obligation jointly with decedent on the bond, which right was then enforced against her share of all of the other assets of decedent's estate then before the court—*not against the mortgaged premises*

which devolved to her by operation of law. There can be no right of contribution here because there was no joint liability of the trustee nor of anyone else upon the note.

The Commonwealth based its claim upon a fiction which the opinion judge refused to adopt. It advances it again in this argument. It admits the debt as a valid deduction but asks us to ignore the question of testator's intention. Its theory is that when an insured reserves the right to change the beneficiary and thereafter assigns the policy as collateral security for a loan, he thereby legally intends that the debt for which the policy is pledged shall be paid from the insurance proceeds, or to put it another way, by the assignment the insured legally appropriates to his estate so much of the policy proceeds as are required to pay the amount of the loan remaining unpaid at his death even though his estate be solvent. The Commonwealth relies upon Fidelity Trust Company v. Union National Bank of Pittsburgh, et al., 313 Pa. 467.

We accord with the opinion judge's rejection of this argument. The facts here are utterly different than those in Fidelity Trust Company v. Union National Bank et al., supra, and, therefore, the cited case has no application here. There the insured was insolvent when he changed the beneficiary. Here there was no change of beneficiary and the insured was solvent at all times; there, the change was made to a creditor as additional collateral and it was found, therefore, to be fraudulent and the action brought was to set aside the change of beneficiary, based upon statutory fraud. No such allegations or proofs are present here. There claimant was a creditor; here claimant is the Commonwealth seeking taxes.

We refuse to draw into this testamentary estate any part of the proceeds of the insurance for the same reason that the court refused a similar request of

the Commonwealth's in Kershaw Estate, supra. There the Supreme Court held that the collateral mortgaged real estate ceased to be owned by decedent upon his death, but passed to the widow, under the principle of tenancy by entireties. Here, conveyor having died, the policies of life insurance matured and the proceeds passed to the trustees; therefore, we uphold the exemption of the proceeds under the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, sec. 1 (d) as amended, 72 PS §2301, which provides:

"The proceeds of policies of life insurance, payable otherwise than to the estate of the insured, and whether paid directly by the insurer to beneficiaries designated in the policies, or to a trustee designated therein, and held, managed, and distributed by such trustee to or for the benefit of such persons or classes of persons under such plan and in such estates as may have been prescribed by the insured under agreement with such trustee, shall not be included in imposing any tax under this section: . . ."

This exemption legislation is absolute in its terms. It embraces all policies of life insurance. It does not exclude from its benefits policies wherein the right to change the beneficiary is reserved. If that is a defect in the law, it must be corrected by the legislature, not by the courts. The Commonwealth asks us to tax these policies by indirection when this legislation directly exempts them. This we refuse to do.

The Commonwealth is inferentially asking us to revolutionize the laws of life insurance, banking, deeds of trust, wills and decedents' estates. For this court to make these insurance proceeds subject to inheritance taxes would result in making such proceeds available to many other parties not now entitled; for instance, disappointed surviving spouses in the exercise of their rights of exemption or allowance, or of taking against

the deceased spouse's will, of all unpaid creditors of estates, of disappointed legatees, etc. That we lack such power is clear. Since the Commonwealth's rights of taxation are inferior to any of these interests, it is equally clear that we cannot recognize it.

While the insured may own his policies of life insurance, when he assigns them for a debt he encumbers them so that he can do nothing affecting them to the extent of the debt. Therefore, it is impossible for him to bring into his testamentary estate so much of the proceeds of them as are necessary to pay the debt. Secondly, when he dies, as is pointed out in Kershaw Estate, supra, his right dies with him and the rights of the pledgee and the beneficiaries under the policies succeed him, *not his testamentary estate*. A third defect of the Commonwealth's theory is that it relies upon the equitable doctrine of subrogation. This is the right of one who has paid a debt when he was but secondarily and not equally liable to recover in equity from another who is primarily or ultimately liable, for the whole of what he has paid. The right does not exist in favor of the one primarily liable, against the one secondarily liable: Royal Arcanum v. Cornelius, 198 Pa. 46; Crone's Appeal, 103 Pa. 571. Under the authorities hereinbefore cited, the testamentary estate is always primarily liable and, therefore, it cannot be subrogated to any other fund.

This decision is consistent with Estate of Andrew L. Horst, no. 46704, Montgomery County, June 6, 1941.

The exceptions are sustained, the appeal of the taxpayer is sustained and the register's assessment of tax is modified accordingly.

### Dissenting Opinion

LADNER, J., February 14, 1949.—I agree with the hearing judge's disposition of this case, and therefore dissent from the opinion of the majority.

The hearing judge finds the intention of the decedent to be that the debt for which the insurance policies were the only collateral pledged, was to be paid out of the policies, and only the balance remaining was to comprise the trust for the named beneficiaries. This intent the hearing judge finds from the three paragraphs in the recital of the deed of trust which he quotes in his adjudication. The argument that the general direction in the *will*, to pay debts, contradicts or supersedes the recitals in the trust deed, cannot prevail for the recitals refer to a specific debt and the direction in the will is a general one. Since the latter covers all debts, it may be reasonably interpreted as applying to all debts not otherwise provided for. See Pennsylvania Horticultural Society v. Craig, 240 Pa. 137, which holds "recitals in a deed are to be considered in determining the true intent and meaning of the parties, and will restrict general words to a narrower meaning if the intent is clear", citing Shurtz v. Thomas, 8 Pa. 359. (Syllabus)

What settlor really gave to his trustees under the deed was the proceeds of the life insurance policies after the debt for which they were collateral was first paid out of them. The alternate beneficiaries had merely an expectancy which might be enlarged or diminished as settlor in his lifetime, by reducing the loan or further borrowing, might determine: Fidelity Trust Co., Admr., v. Union National Bank of Pittsburgh et al., 313 Pa. 467, 487.

Of course, a creditor, unless he agrees otherwise, may collect payment of his debt in any way that appeals to him as most convenient, and need not restrict himself to the collateral nor exhaust it first. But his choice does not change the rights of other parties. If the residuary legatees under the will had been different parties from those under the deed of trust, can it be

doubted that they would have had the right to insist on the executor demanding the delivery to him of the note and collateral for the benefit of the estate when the note was paid? The fact that the executor and trustee are one and the same, and the residue under the will passes into the trust, cannot alter the right of the Commonwealth to its tax. This, as I understand it, is the principle of Kershaw Estate, 352 Pa. 205. I would dismiss the exceptions.

Judge Hunter joins in this dissent.